IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02181-MJW

BARBARA FREEMAN,

Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS,
DENVER WOMEN'S CORRECTIONAL FACILITY, a Colorado Department of Corrections facility,
RICK RAEMISCH, in his official capacity as the Executive Director of the Colorado Department of Corrections,
MAJ. GILBERT CALEY, in his official capacity as a General at the Denver Women's Correctional Facility,
LT. BRENDA BLAND, in her official capacity as a Lieutenant at the Denver Women's Correctional Facility,
DENTIST GERALD THALKER, in his official capacity as Barbara Freeman's primary dentist at the Denver Women's Correctional Facility,
SGT. TRISHA JESIK, in her official capacity as a Sergeant at the Denver Women's Correctional Facility,
SGT. CRYSTAL SESMA, in her official capacity as a Sergeant at the Denver Women's Correctional Facility,
LT. JILL GLACIER, in her official capacity as a Lieutenant at the Denver Women's Correctional Facility,
C/O BRITTANY HOUTZ, in her official capacity as an Officer of the Denver Women's Correctional Facility,

Defendants.

---

ORDER ON DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P.
12(B)(1) AND (6) (Docket No. 76)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before the Court pursuant the parties' consent to magistrate judge jurisdiction. (Docket No. 69.) Plaintiff Barbara Freeman ("Plaintiff") brings this case against Defendants Colorado Department of Corrections ("CDOC"), the Denver

Women's Correctional Facility ("DWCF"), and in their official capacities: Rick Raemisch, Captain Gilbert, Caley, Lieutenant Brenda Bland, Dentist Gerald Thalker, Sergeant Trisha Jesik, Sergeant Crystal Sesma, Lieutenant Jill Glacier, and Correctional Officer Brittany Houtz (collectively "Defendants"). Defendants have moved to dismiss Plaintiff's Third Amended Complaint. (Docket No. 76.) Plaintiff filed a response (Docket No. 82), and Defendants filed a Reply. (Docket No. 83.) The Court has reviewed the parties' filings (Docket Nos. 76, 82, & 85), taken judicial notice of the Court's entire file in this case, and considered the applicable Federal Rules of Civil Procedure, statutes, and case law. Now being fully informed, the Court makes the following order.

## I. BACKGROUND

### a. Procedural History

Plaintiff, proceeding pro se, initiated this case on August 29, 2016. (Docket No. 1.) After making several attempts to cure various pleading deficiencies and amend her claims (Docket Nos. 9, 25, & 44), Plaintiff's Second Amended Complaint was ultimately drawn to the undersigned Magistrate Judge on August 23, 2018. (Docket No. 45.) Plaintiff was appointed pro bono counsel the next day. (Docket No. 50.) Attorneys Sonia Anderson, Ephraim Hintz, and Chris Ottele of the law firm of Husch Blackwell LLP entered appearances on behalf of Plaintiff (Docket Nos. 66, 67, & 71), and Plaintiff was given leave to file a Third Amended Complaint. (Docket No. 74.) Plaintiff filed a Third Amended Complaint, the operative pleading in this case, on November 21, 2018. (Docket No. 75.) On December 4, 2018, Defendants filed the subject motion. (Docket No. 76.)

2

### b. Plaintiff's Third Amended Complaint

The following allegations are taken from Plaintiff's Third Amended Complaint (Docket No. 75), and assumed to be true for the purposes of a motion to dismiss.

Plaintiff, an 83-year-old woman, is in the custody of the CDOC, and is housed in the DWCF. (Docket No. 75 ¶¶ 2, 4, & 15.) The CDOC operates the DWCF, which is an all-women's prison. (*Id*. ¶¶ 3-4.) Defendant Raemisch is the CDOC's Executive Director. (*Id.* ¶ 5.) Defendant Caley is a DWCF General and was the supervisor of DWCF's Unit 1 during the relevant period. (*Id.* ¶ 6.) Defendant Bland is a DWCF Lieutenant who was in charge of DWCF's Offender Care Aid ("OCA") during the relevant period. (*Id.* ¶ 7.) Defendant Thalker was Plaintiff's primary dentist at DWCF during the relevant period. (*Id.* ¶ 8.) Defendant Jesik was a DWCF Sergeant and the OCA schedule co-coordinator for DWCF's Unit 2. (*Id.* ¶ 9.) Defendant Sesma is a DWCF Sergeant and the OCA schedule co-coordinator for DWCF's Unit 2. (*Id.* ¶ 10.) Defendant Glacier is a DWCF Lieutenant and is in charge of assigning medical mattresses and room changes in DWCF's Unit 2. (*Id.* ¶ 11.) Defendant Houtz was a DWCF Correctional Officer in DWCF's Unit 1 during the relevant period. (*Id.* ¶ 12.)

Plaintiff is legally blind; she also has arthritis in her hands which prevents her from writing or performing manual tasks, lower mobility impairments, and vertebrate contusions. (*Id*. ¶ 21.) As a result of these limitations, Plaintiff is "disabled" as defined by the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*., and the CDOC's "Montez Policy." (*Id*. ¶¶ 1, 16, 20, & 21.) Under the ADA, Plaintiff is entitled to reasonable accommodations at DWCF. (*Id*. ¶ 22.) The Montez Policy

likewise requires all Colorado correctional facilities to provide disabled inmates adequate accommodations and "everyday assistance," and prohibits discrimination against disabled inmates. (*Id*. ¶¶ 19 & 23.) The Montez Policy provides that all inmates with mobility impairments must be placed in a "Montez Remedial room," which is a handicapped accessible cell equipped with necessary accommodations for disabled inmates, including services provided by an inmate aide (known as an "OCA 3") to help perform various tasks, a thicker mattress (known as a "medical mattress"), and hearing and visual aids in the event of an emergency evacuation. (*Id*. ¶¶ 25-27, & 29.)

When Plaintiff arrived at DWCF in 2001, she was placed into a Montez Remedial room in DWCF's Unit 1. (*Id*. ¶ 28.) She resided there until July 16, 2016, when Defendants Caley and Houtz moved Plaintiff into a non-Montez Remedial room after she complained that she was allergic to the dogs that were allowed into Unit 1. (*Id*. ¶ 34.) She remained in a non-Montez Remedial room for 30 days, even though she told Defendants Caley and Houtz that she needed to stay in a Montez Remedial room under the ADA and the Montez Policy. (*Id*. ¶¶ 35-36.) Defendants Bland, Jesik, and Sesma denied Plaintiff access to the services of an OCA 3 during this period. (*Id*. ¶ 37.) Due to her disabilities, Plaintiff needs an OCA 3 to help her with various daily tasks. (*Id*. ¶ 3.) As a result of Defendants Bland, Jesik, and Sesma's actions, during those 30 days, Plaintiff: (1) bathed only once, due to her fear of falling while showering unassisted; (2) missed several meals because she could not walk alone to the cafeteria without falling; (3) could not take her medication because she could not walk unassisted to medication dispensary line. (*Id.* ¶¶ 38-40.) Plaintiff informed Defendants Caley,

Bland, Jesik, Sesma, and Glacier that the non-Montez Remedial room was inadequate to accommodate her needs, but these Defendants did nothing to assist her. (*Id*. ¶ 41.)

Plaintiff was moved into a Montez Remedial room DWCF's Unit 2 on August 16, 2016. (*Id.* ¶ 42.) However, she could not sleep in the room because it did not have a medical mattress and because her roommate's oxygen machine was too noisy. (*Id.*) She complained to Defendant Glacier, who refused to provide her with a proper mattress. (*Id.*)

Plaintiff was eventually moved back to a Montez Remedial room in DWCF's Unit 1, but on at least one occasion, had to miss a meal because the Defendants fail to schedule an OCA 3 to help assist her. (*Id*. ¶¶ 43-44.)

Plaintiff also alleges that on December 18, 2015, she requested a dental appointment with Defendant Thalker regarding tooth pain. (*Id*. ¶ 32.) Defendant Thalker did not reply for 10 weeks, and did not see Plaintiff until DWCF officers set up an appointment for her. (*Id.*) It took almost a year to schedule oral surgery, and the delay caused Plaintiff to lose two bottom teeth, which has resulted in her experiencing continuous discomfort while eating. (*Id.*)

Plaintiff asserts two claims for relief. First, Plaintiff alleges that all Defendants, save Defendant Thalker, violated her rights under Title II of the ADA. (*Id*. ¶¶ 45-55.) Second, Plaintiff alleges that all Defendants, save Defendant Raemisch, are liable under 42 U.S.C. § 1983 for violating her Eighth Amendment right of "no cruel and unusual punishment" by depriving her of adequate ADA and Montez Policy accommodations, pain medication, hygienic services, dental care, and food. (*Id*. ¶¶ 56-

62.) She seeks monetary damages and injunctive relief.

Defendants now move to dismiss Plaintiff's Third Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (Docket No. 76). Defendants argue that any claims for monetary damages against Defendants in their official capacities are barred by the Eleventh Amendment and therefore the Court lacks subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Defendants also argue that Plaintiff has failed to state viable claims for prospective injunctive relief under the ADA and/or the Eighth Amendment.

## II. LEGAL STANDARDS

### a. Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case; rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). Rule 12(b)(1) motions generally take one of two forms: a facial attack or a factual attack. When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a factual attack on a complaint supported by affidavits and other documents, the Court makes its own factual findings and need not convert the motion to one brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. *Id.* at 1003.

**b. Fed. R. Civ. P. 12(b)(6)**

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The Court's function on a Rule 12(b)(6) motion . . . is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is sufficient to plausibly state a claim." *Spring Creek Exploration & Prod. Co., LLC v. Hess Bakken Investment II, LLC*, 2014 WL 4400764, at *2 (D. Colo. Sept. 5, 2014). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" *Cutter v. RailAmerica, Inc.*, 2008 WL 163016, at *2 (D. Colo. Jan. 15, 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. "[A] plaintiff must 'nudge [ ] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these

claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570).

The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F. 3d 1188, 1191 (10th Cir. 2012). The Circuit court has further "noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'" *Id*. The court thus "concluded the *Twombly/Iqbal* standard is 'a wide middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" *Id*.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. *Morse v. Regents of the Univ. of Colo*., 154 F.3d 1124, 1126–27 (10th Cir. 1998); *Seamons v. Snow*, 84 F. 3d 1226, 1231–32 (10th Cir. 1996). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions[.]'" *Khalik*, 671 F.3d at 1190 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.* at 1191.

### III. ANALYSIS

**a. Plaintiff's 42 U.S.C. § 1983 Claim**

Defendants argue that Plaintiff's § 1983 claim fails to state a viable claim for injunctive relief.[1] Defendants argue that Plaintiff's Third Amended Complaint does not allege that her Eighth Amendment rights are currently being violated, and that this claim is therefore moot.

The doctrine of mootness is an aspect of Article III's case or controversy requirement. A case becomes moot when the issues involved are no longer "live" or the parties have no personal stake in the outcome. *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395–96 (1980). In practical terms, a plaintiff's claim is moot if no reasonable expectation that the alleged violation will recur exists and interim events have eliminated the effects of the alleged violation. *Committee for the First Amendment v. Campbell*, 962 F.2d 1517, 1524 (10th Cir.1992) (citation omitted). "In such a situation, a federal court decision provides no resolution between the parties to the lawsuit and therefore, constitutes a constitutionally impermissible advisory opinion." *United States v. Dominguez–Carmona*, 166 F.3d 1052, 1055 (10th Cir.1999), *overruled on other grounds by United States v. Meyers*, 200 F.3d 715, 721–22 (10th Cir.2000). "When a favorable decision will not afford plaintiff relief, and plaintiff's case is not

---

[1] Defendants interpreted Plaintiff's Third Amended Complaint to assert a 42 U.S.C. § 1983 claim for monetary damages against Defendants in their official capacities, and they originally argued that any such claim is barred by sovereign immunity under the Eleventh Amendment. However, Plaintiff states in her Response that she only seeks prospective injunctive relief for her 42 U.S.C. § 1983 claim. (Docket No. 82 at 4.) Thus, this issue is moot. Similarly, Plaintiff clarifies that she does not seek injunctive relief under the ADA. (*Id.* at 11.)

capable of repetition yet evading review, [the Court has] no jurisdiction under Article III." *McAlpine v. Thompson*, 187 F.3d 1213, 1216 (10th Cir.1999).

Even if a case is not constitutionally moot, "a court may dismiss [a] case under the prudential-mootness doctrine if the case 'is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant.'" *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1121 (10th Cir. 2010) (quoting *Fletcher v. United States*, 116 F.3d 1315, 1321 (10th Cir. 1997)). In general, the prudential mootness doctrine only applies where, as here, the plaintiff seeks injunctive or declaratory relief. *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011). Where a plaintiff seeks an injunction, "[her] susceptibility to continuing injury is of particular importance—'[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). "Moreover, a plaintiff's continued susceptibility to injury must be reasonably certain; a court will not entertain a claim for injunctive relief where the allegations take it into the area of speculation and conjecture." *Id.* (citation and alterations omitted).

Plaintiff contends that Defendants can move her back into a non-Montez Remedial room at any time they please, thus invoking the doctrine of voluntary cessation, an exception to a claim of mootness. As explained by the Tenth Circuit:

> One exception to a claim of mootness is a defendant's voluntary cessation of an alleged illegal practice which the defendant is free to resume at any time. The rule that voluntary cessation of a challenged practice rarely moots a

> federal case . . . traces to the principle that a party should
> not be able to evade judicial review, or to defeat a judgment,
> by temporarily altering questionable behavior. In other
> words, this exception exists to counteract the possibility of a
> defendant ceasing illegal action long enough to render a
> lawsuit moot and then resuming the illegal conduct.

*Rio Grande Silvery Minnow*, 601 F.3d at 1115 (citations omitted). Voluntary actions may moot litigation if two conditions are satisfied: "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). "Voluntary cessation of offensive conduct will only moot litigation if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction." *Id.* (alteration omitted).

Here, the only allegation as to Plaintiff's current conditions of confinement is that she "continues to miss meals. For example, she missed a lunch on November 3, 2017 because Defendants failed to schedule an OCA 3 to help [her]". (Docket No. 75 ¶ 44.) Thus, Plaintiff can only cite to one specific instance of a missed a meal in the 15-month-period between her placement back into a Montez Remedial room and the filing of her Third Amended Complaint.[2] This is plainly insufficient for the Court to conclude with reasonable certainty that Plaintiff is susceptible to continued injury. "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v.*

---

[2] In her Response, Plaintiff states that she missed lunch on December 11 and 18, 2018 as well. (Docket No. 82 at 5.) These allegations are not contained in the Third Amended Complaint; however, even if they were, it would not change the Court's analysis.

*McMillian*, 503 U.S. 1, 9 (1992). While prison officials must ensure "inmates receive the basic necessities of nutritionally adequate food," *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006), missing sporadic lunch meals does not rise to the level of a constitutional violation. *See Harris v. Gutierrez*, Case No. 09-CV-00424-BN, 2009 WL 1064947, at *2 (D. Colo. Apr. 17, 2009).

Moreover, it is obvious that Defendants were not engaged in "subterfuge" or seeking "to evade the jurisdiction of the court" when transferring Plaintiff from the non-Montez Remedial room on August 16, 2016. Indeed, this case was not initiated until August 29, 2016, almost two weeks after the transfer. (Docket No. 1.) Instead, it undisputed that, except for one 30-day period, Plaintiff has been housed in a Montez Remedial room since she arrived at DWCG over 18 years ago. Therefore, the Court finds that the voluntary cessation argument is meritless, and Plaintiff's claim for injunctive relief under § 1983 must be dismissed under Rule 12(b)(1).

### b. Plaintiff's ADA Claim

Defendants next move to dismiss Plaintiff's ADA claim on the basis of sovereign immunity.

The doctrine of Eleventh Amendment immunity protects states and their agents from suit when acting in their official capacities. *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 558–559 (10th Cir. 2000). To the extent that Plaintiff sues Defendants in their official capacities, "[s]uits against state officials in their official capacit[ies] should be treated as suits against the state." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Thus, pursuant to the Eleventh

Amendment, the Court lacks subject matter jurisdiction to adjudicate an action brought by a citizen of a state against the state itself, its agencies, or its officials in their official capacities for monetary relief. *See Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir.1995).

However, the Supreme Court has held that "Congress may abrogate the State's Eleventh Amendment immunity." *Tennessee v. Lane*, 541 U.S. 509, 517 (2004). When analyzing whether Congress has effectively abrogated sovereign immunity, the Court "must resolve two predicate questions: first, whether Congress unequivocally expressed its intent to abrogate that immunity; and second, if it did, whether Congress acted pursuant to a valid grant of constitutional authority." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000). Congress unequivocally expressed its intent to abrogate Eleventh Amendment immunity for ADA claims by enacting the following language: "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202; *see also Lane*, 541 U.S. at 518. To resolve "whether Congress acted pursuant to a valid grant of constitutional authority" when it expressed this intent, the Court applies the three-step analysis set forth in *United States v. Georgia*, 546 U.S. 151 (2006). The Court must determine,

> on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

546 U.S. at 159.

### 1. Step One: ADA Claim

The Court must first "identify the state's conduct that allegedly violated Title II's prohibition against disability discrimination in the provision of state services or programs." *Guttman v. Khalsa*, 669 F.3d 1101, 1113 (10th Cir. 2012). Title II of the ADA states, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II, the plaintiff must allege that "(1) [s]he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Robertson v. Las Animas Cnty. Sheriff's Dept.*, 500 F.3d 1185, 1193 (10th Cir. 2007).

Here, Plaintiff adequately alleges that she is a qualified individual with a disability. (Docket No. 75 ¶¶ 1, 16, 20, & 21.) She also adequately alleges that she was denied the benefits of prison services that other all other inmates were entitled to (i.e., meals, showers, and medication), as well as services that were provided to all other disabled inmates (the Montez Remedial room). (*Id.* ¶¶ 25-29.)

As to the third element, Defendants argue that Plaintiff's allegations do not demonstrate that the Defendants' alleged failure to accommodate her disabilities was due to an intent to discriminate against her because of her disability. However, public entities are required to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7); *see also Robertson*, 500 F.3d at 1195. Plaintiff

alleges that Defendants were required, by the ADA and CDOC policy, to place all inmates with mobility, hearing, and vision impairments in Montez Remedial rooms. By placing Plaintiff, who Defendants knew suffered these impairments, in a non-Montez room, and thereby denying her access to an OCA 3 and a medical mattress, Defendants can be said to have discriminated against Plaintiff on the basis of her disabilities. *See Georgia*, 546 U.S. at 157 ("[I]t is quite plausible that the alleged deliberate refusal of prison officials to accommodate Goodman's disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constituted 'exclu[sion] from participation in or . . . deni[al of] the benefits of' the prison's 'services, programs, or activities.'") (quoting 42 U.S.C. § 12132). *See also Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). Accordingly, Plaintiff has met the first *United States v. Georgia* factor.

### 2. Step Two: Fourteenth Amendment Claim

The Due Process Clause of the Fourteenth Amendment incorporates the Eighth Amendment's guarantee against cruel and unusual punishment. *Georgia*, 546 U.S. at 157 (citation omitted). "The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, the prison official

15

"must have a sufficiently culpable state of mind," which means that the official may not be "found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety." *Id.* at 834, 837 (quotation omitted). The requirement that a prison official "know[ ] of and disregard[ ] an excessive risk to inmate health or safety" logically dictates that a "deprivation of [necessities] without any corresponding injury would not state an Eighth Amendment violation." *Whittington v. Ortiz*, 472 F.3d 804, 808 (10th Cir. 2007).

Plaintiff claims that Defendants deprived her of pain medication, hygienic services, dental care, and food in violation of the Eighth Amendment. As noted above, Plaintiff's allegations as to her current conditions of confinement do not give rise to Eighth Amendment liability, so the Court will focus on her allegations of alleged past misconduct.

First, a deprivation of hygiene items without any corresponding injury does not state an Eighth Amendment violation. *Id.* Plaintiff fails to allege that she suffered any injury as a result of only being able to shower once in 30 days; therefore, she has not stated a claim under the Eighth Amendment. *Cf. Penrod v. Zavaras,* 94 F.3d 1399, 1406 (10th Cir. 1996) (holding that a prisoner's claim that prison officials' refusal to provide hygiene items caused "his gums to bleed and recede and tooth decay" states a claim for a violation of the Eighth Amendment).

The Court finds, however, that Plaintiff' allegations that her transfer to a non-Montez room, which caused her to miss meals and medication and deprived her of a medical mattress, does state a claim under the Fourteenth Amendment. The substantial deprivation of food may be sufficiently serious to state a conditions of confinement claim

16

under the Eighth Amendment. *See Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002). Moreover, "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Plaintiff is an elderly woman who suffers from multiple ailments. She alleges that Defendants were aware of her disabilities and that her placement in a non-Montez remedial room meant that she would be deprived of food, medicine, and a medically-necessary mattress. Accepting these allegations as true and drawing all reasonable inferences in favor of Plaintiff as the Court must at this stage, the Court finds these allegations sufficient to support her assertion that Defendants' actions constituted a known and excessive risk to her health.

### 3. Step Three: Sovereign Immunity Analysis

Because the Court has determined that Plaintiff has adequately alleged that Defendants' misconduct violated Title II as well as the Fourteenth Amendment, the Court does not have to address the final factor. *See Georgia*, 546 U.S. at 159.

### c. Plaintiff's Eighth Amendment Claim Against Defendant Thalker

Plaintiff also asserts a 42 U.S.C. § 1983 claim against Defendant Thalker regarding his failure to provide her with dental care. Defendant Thalker is sued in his official capacity, meaning Plaintiff can only obtain prospective injunctive relief from him. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 169-70 (1985). However, all of her allegations regarding Defendant Thalker relate to events that occurred in the past. She does not allege that he has continued to deny her adequate medical care, such that an injunctive relief would be appropriate. Accordingly, Plaintiff's claim against Defendant Thalker must be dismissed.

## IV. ORDER

It is hereby ORDERED that Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (Docket No. 76) is **GRANTED IN PART** and **DENIED IN PART** as follows:

- **DENIED** as to Plaintiff's First Claim for Relief - Violation of Title II of the ADA—42 U.S.C. § 12132; and

- **GRANTED** as to Plaintiff's Second Claim for Relief - Violation of 42 U.S.C. § 1983 and such claim is **DISMISSED WITHOUT PREJUDICE**.

Dated:  June 22, 2018  /s/ Michael J. Watanabe
Denver, Colorado  Michael J. Watanabe
United States Magistrate Judge